**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARISSA BIBBS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 20-4514** |
| | : | |
| **TRANS UNION LLC** | : | |

# MEMORANDUM

**KEARNEY, J.** **February 23, 2021**

Marissa Bibbs claims credit reporting agency Trans Union violates federal law by reporting both a zero-balance owed to student loan creditor Navient and a debt owed to Navient over 120 days past due when Navient transferred the debt and closed her account. She does not identify a loss or the denial of credit because of Trans Union's reporting. She instead argues it is impossible to both owe nothing to Navient when it transferred and closed her account and have a pay status of 120 days past due. Her argument makes some sense on first pass when looking at one entry on her credit report. But we must read the entire report mindful Congress does not require Trans Union provide an encyclopedic explanation of her obligation to the creditor; a credit report instead offers a snapshot which must be accurate or not mislead a creditor based on the entirety of investigated and reported data. All parties concede Navient transferred her overdue debt on the date reported, closed her obligation, and reported her as paying 120 days past due. This is patently accurate. It is not misleading. We grant Trans Union's Motion for judgment on the pleadings and deny Ms. Bibbs's cross-Motion because Trans Union accurately represents her obligation as of the date Navient closed and transferred her debt. There is no dispute she owed nothing more to Navient upon transfer and her obligations had been 120 days past due at time of transfer. We grant her leave to timely amend if she can plead facts consistent with Rule 11 showing the credit report is patently inaccurate or misleading.

## I. Alleged undisputed facts

Marissa Bibbs agreed to repay six student loans to loan provider Navient in 2013.[1] She fell more than 120 days behind on her payments by August 2017.[2] Ms. Bibbs does not allege she paid off her accounts before Navient closed them in April 2018 and transferred them to another lender.[3] After transfer, Ms. Bibbs had a $0 balance owed to Navient.[4] Ms. Bibbs received a credit report from Trans Union LLC at some unpleaded time for an unpleaded reason.[5] According to Ms. Bibbs, the credit report listed the "Status" of these six accounts as "120 Days Past Due," but also noted a "$0" balance.[6]

Ms. Bibbs's attorney disputed her credit report. Her attorney, who has now filed more than sixty complaints in this District alone and several more across the country alleging nearly identical facts, sent a letter to Trans Union on July 13, 2018, disputing the report and threatening to file a lawsuit if "this incorrect information is not removed or corrected."[7] He elaborated, "it is impossible for [the loans'] current status to be listed as late" if the balance on the loans is zero.[8]

Trans Union timely responded with the results of its investigation into her dispute.[9] Trans Union's investigation report (different from the credit report) includes a "Note on Credit Report Updates," which explains, "[f]or inactive accounts of accounts that have been closed and paid, **Pay Status** represents the last known status of the account."[10] Directly below the "Note on Credit Report Updates," Trans Union's investigation report provides a table of definitions "to help [the requesting consumer] understand **Your Investigation Results**."[11] In this table, Trans Union defines "Pay Status" as "[t]he current status of the account; how you are currently paying."[12] Under the definitions table in the investigation report, Trans Union provides a "Ratings Key."[13] The Ratings Key explains, "[a]ny rating that is shaded or any value in the account detail appearing with brackets (> <) may indicate that it is considered adverse."[14]

Trans Union then provided the substance of the investigation results copying how the disputed account "appears on your credit report following our investigation."[15] One of the six identical excerpts provided to us by counsel demonstrates:

| | | | | | |
|---|---|---|---|---|---|
| **Date Opened:** | 09/18/2010 | **Balance:** | $0 | **Pay Status:** | >Account 120 Days Past Due< |
| **Responsibility:** | Individual Account | **Date Updated:** | 04/05/2018 | **Terms:** | Monthly for 188 months |
| **Account Type:** | Installment Account | **Last Payment Made:** | 06/19/2015 | **Date Closed:** | 04/05/2018 |
| **Loan Type:** | STUDENT LOAN | **High Balance:** | $667 | >Maximum Delinquency of 120 days in 07/2017 and in 04/2018< | |
| | | **Original Charge-off:** | $0 | | |

**Remarks:** ACCT CLOSED DUE TO TRANSFER; TRANSFERRED TO ANOTHER OFFICE
**Estimated month and year that this item will be removed:** 03/2024

| | 03/2018 | 02/2018 | 01/2018 | 12/2017 | 11/2017 | 10/2017 | 09/2017 | 08/2017 | 07/2017 | 06/2017 | 05/2017 | 04/2017 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Rating | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 120 | 90 | OK | OK |

The report on the remaining five loans are identical in all relevant respects. Each excerpt shows Ms. Bibbs's accounts: (1) have a zero-dollar balance; (2) were last updated on April 5, 2018; (3) were closed on April 5, 2018; (4) had a maximum delinquency of 120 days in July 2017 and in April 2018; and (5) were closed because Navient transferred them to another office. The Ratings Key for each account provides data on Ms. Bibbs's payment status up until March 2018 but does not provide data beyond then.

Ms. Bibbs sued Trans Union for violating the Fair Credit Reporting Act by inaccurately reporting her Pay Status as ">Account 120 Days Past Due<" and failing to adequately investigate and correct the information following her dispute.[16] She alleges this purported inaccuracy "misleads the credit scoring used by the lending industry and thus lowers credit scores and further damages Plaintiff's credit worthiness and credit information."[17] She does not allege she personally has been denied credit or offered credit at an unduly high rate as a result of

this allegedly inaccurate reporting. She instead alleges she suffered unspecified "actual damages, mental anguish, humiliation, and embarrassment" as a result of Trans Union's reporting.[18]

## II. Analysis

Ms. Bibbs sued Trans Union under the Fair Credit Reporting Act for inaccurately reporting her Pay Status with creditor Navient as 120 days past due even though Navient closed and transferred her account resulting in zero-dollar balance owed to Navient upon transfer. Ms. Bibbs claims Trans Union violated the Act by: (1) "negligently and willfully fail[ing] to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties"; and (2) "failing to conduct a good faith investigation and failing to permanently delete or modify inaccurate information after receiving [her] dispute."[19]

Trans Union and Ms. Bibbs now cross-move for judgment on the pleadings. Trans Union argues Ms. Bibbs cannot prevail on either claim as a matter of law because Trans Union "accurately reported [Ms. Bibbs's] six Navient student loan accounts . . . as 'closed due to transfer.'"[20] Trans Union argues its credit report does not characterize Ms. Bibbs's pay status as "'currently' 120 days past due," rather, its reporting "clearly indicates [Ms. Bibbs] was, *in the past*, 120 days past due in the historical pay status section."[21] Trans Union further argues consumers, like Ms. Bibbs, may recover under the Fair Credit Reporting Act prevail only if they can plead a negligent or willful violation of the Act.[22] To prevail on a negligence theory, Trans Union argues Ms. Bibbs must plead she suffered "actual damages."[23] If she cannot plead "actual damages," she must plead Trans Union willfully violated the act to recover. Trans Union argues Ms. Bibbs has pleaded neither "actual damages" nor a "willful violation."[24]

Ms. Bibbs argues we must let the jury decide whether this reporting is accurate. Or if we find we can determine accuracy as a matter of law, Ms. Bibbs argues we should grant judgment on the pleadings to her. In response to Trans Union's argument Ms. Bibbs fails to plead "actual damages" or a willful violation, Ms. Bibbs argues Federal Rule of Civil Procedure 8 sets a low standard, and asks we grant her leave to amend if we find her pleading of damages or other broadly pleaded facts are insufficient under Rule 8.

To determine whether to grant judgment on Ms. Bibbs's claims, we must first assess whether the information reported is inaccurate or misleading. We find the information to be neither inaccurate nor misleading, and grant Trans Union's motion.

**A. We consider only the excerpts of the credit report from the investigation results in determining whether the report is inaccurate or misleading.**

A credit report runs afoul of the Fair Credit Reporting Act if the information reported is factually incorrect or "misleading in such a way and to such an extent that [it] can be expected to have an adverse effect."[25] In determining whether reported information is misleading, we view the information through the lens of a person in a position to make an adverse decision based on a credit report, i.e., a creditor.[26]

While both parties ask us to opine on the accuracy of the credit report, neither party provided an actual credit report for our review. The parties instead agreed to provide only the investigation results and agreed these results provide all the information we need to determine whether Trans Union's reporting of the Navient debt is inaccurate or misleading.[27] We accept the parties' representation we can determine the accuracy of the report using the investigation results, but we will not consider provisions of the investigation results a creditor would not see or consider in making a credit decision. For example, we cannot consider the definition of "Pay Status" in the investigation results, and we will not consider the instructions in the "Note on

Credit Report Updates" on how to read the "Pay Status" field after an account has been closed. This information is not provided to a creditor.

The parties offer competing views on how we should read the excerpted investigation results to determine the accuracy of the credit report. Ms. Bibbs first points to the excerpt of her updated credit report appearing in her investigation results. The excerpt shows her "Pay Status" as ">Account 120 days Past Due<" on her six closed Navient Accounts. Ms. Bibbs argues this line independently signals to a creditor she is "currently" delinquent on an account. Ms. Bibbs also points to the table in the investigation results defining "Pay Status" as "[t]he current status of your account; how you are currently paying" in support of this position.[28] But at oral argument, Ms. Bibbs conceded a creditor would never actually see this definition of Pay Status because it would not appear on an actual credit report. Rather, the definition appears only in the investigation results, which Trans Union furnishes privately to a consumer following a dispute. Thus, we do not consider the definition of "Pay Status" in analyzing the question before us: whether a *creditor* would find the information materially false or misleading.

Trans Union argues we cannot look at "Pay Status" in isolation, as Ms. Bibbs urges, and instead must view it in conjunction with the other tradelines relating solely to the Navient debt. Trans Union directs us to: (1) the "Balance" field, which lists "$0"; (2) the "Date Closed" field, which lists April 5, 2018; (3) the "Date Updated" field, which lists April 5, 2018; (3) the "Remarks", which notes "ACCT CLOSED DUE TO TRANSFER; TRANSFERRED TO ANOTHER OFFICE"; and (4) the "Ratings" section, which does not list ratings beyond March 2018.[29]

Trans Union further argues, to the extent we consider the definition of "Pay Status" in the investigation results never shown to the creditor (which we will not consider), we should also

look to the "Note on Credit Report Updates," which appears directly above the definitions table and provides, "[f]or inactive accounts or accounts that have been closed and paid, **Pay Status** represents the last known status of the account." But we will not consider the definition of "Pay Status," as a creditor would never see this information, and we will not consider the "Note on Credit Report Updates" for the same reason. To determine whether the report is inaccurate or misleading, we will consider only the excerpts of the credit report appearing in the investigations and we will disregard any information a creditor would not see.

**B. The reported information is neither inaccurate nor misleading.**

Having reviewed the excerpts of the credit report, we find the reported information is accurate and would not mislead a reasonable creditor. Our Court of Appeals instructs, "[a] [credit] report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect."[30] "[A] consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression."[31]

While "the issue whether 'technically correct' information was misleading in such a way that it could have been expected to have an adverse effect is generally a question for the jury,"[32] several courts facing nearly identical facts have found credit reports reporting a historical past due pay status to be accurate and not misleading as a matter of law.

For example, in *Schweitzer v. Equifax Solutions, LLC*, our Court of Appeals held a credit reporting agency accurately represented information in its reports when a mortgage account read "Over 120 Days Past Due," but additional information showed the consumer paid off the account in full.[33] The credit reporting agency in *Schweitzer* included additional information in its report showing a consumer paid off his mortgage.[34] The consumer argued the reporting agency violated

the Act by stating his mortgage account "had been 'Over 120 Days Past Due" in two different credit reports.[35] Our Court of Appeals affirmed summary judgment on this entry because the reporting agency "properly reflected" the consumer had paid off the balance of his account.[36] Our Court of Appeals determined the report did not include inaccurate information.[37]

In *Settles v. Trans Union, LLC*, a consumer argued Trans Union inaccurately listed his student loan as "120 days past due," even though the student loan account had closed leaving a balance of zero owed on the closed account.[38] Judge Campbell, Jr. analyzed the issue under our Court of Appeals' standard for accuracy and concluded "the reported information . . . is neither inaccurate nor materially misleading."[39] Judge Campbell, Jr. found "it implausible that a creditor would be misled into believing [the consumer] is currently 120 days past due on his payment obligation each month when the reporting of the account state[d] that the account was closed . . . and ha[d] a zero-dollar balance."[40]

In *Gross v. Private National Mortgage Acceptance Co., LLC*, Judge Cogan similarly granted Trans Union's motion to dismiss the consumer's claims of inaccuracy in the credit report.[41] Like the consumer in *Settles*, the consumer in *Gross* "zeroe[d] in on the 'Pay Status' of '30 Days Past Due Date'" language of Trans Union's credit report.[42] The consumer argued Trans Union inaccurately listed the "Pay Status" as past due because a private mortgage company already transferred his loan account to a different lender.[43] Judge Cogan aptly observed reading "rest of the [credit report's] entries," rather than "read[ing] the 'Pay Status' entry in isolation," shows "the account was *previously* 30 days past due."[44] Judge Cogan held "[i]t is simply not plausible to think that a creditor would conclude" Trans Union's reported inaccurate information in its credit report.[45]

In *Hernandez v. Trans Union, LLC*, Judge Vinson also granted Trans Union's motion for judgment on the pleadings dismissing a consumer's claims of inaccuracy under the Act.[46] The consumer in *Hernandez* sued Trans Union for reporting the "pay status" of a residential mortgage loan as "120 days past due."[47] The consumer "signed a short sale agreement and sold the property securing the [l]oan," paying off the mortgage account under the terms of the short sale agreement.[48] Like the consumer reports in *Settles* and *Gross*, Trans Union reported a zero balance on the credit report in *Hernandez* and represented the creditor previously closed the loan.[49] Judge Vinson stated, "no reasonable creditor looking at the report would be misled into believ[ing] that the plaintiff was 'still late' on the Account."[50] Judge Vinson did not focus "on a single field of data" in making this decision, rather, "the [credit] report [was] reviewed and considered in its entirety."[51]

We are mindful courts have also come out the other way. For example, in *Mund v. Transunion*, the consumer's credit report listed her pay status as ">Account 120 Days Past Due<", but also reported a zero-dollar balance.[52] Trans Union argued the pay status, when read in conjunction with the surrounding tradelines, confirms the 120 day delinquency occurred in the past.[53] Trans Union pointed to the zero-dollar balance, the remark the account had been closed, the date updated field, and the date closed field.[54] Judge Cogan held the consumer adequately alleged the information was materially misleading.[55] In his later opinion in *Gross*, Judge Cogan distinguished *Mund* on the grounds the credit report in *Mund* "indicated that the plaintiff still had a monthly payment of $4,123.[56]

In *Friedman v. CitiMortgage, Inc.*, the consumer defeated a motion to dismiss where CitiMortgage reported his pay status 120 days past due, reported a zero-dollar balance, and reported a $360 per month payment.[57] Judge Brichetti held the consumer plausibly alleged the

reported information could cause "lenders [to] believe plaintiff is currently delinquent, negatively affecting potential lenders' perception of plaintiff's creditworthiness."[58]

Judge Salas recently cited *Friedman* and *Mund* to deny Trans Union's motion for judgment on the pleadings in *Huggins v. FedLoan Servicing*, finding "[t]he Court cannot say here, at the pleading stage and without the disputed tradeline in the record, that a tradeline indicating that a consumer is 120 days late, after the customer had transferred the debt is not misleading as a matter of law."[59] She distinguished *Schweitzer* and *Settles* on the grounds those judges had the disputed credit information available to them when they decided those cases.[60] Judge Salas, by contrast, had to rely solely on the consumer's allegations.

In *Soler v. Trans Union*, Judge Fischer denied Trans Union's motion to dismiss on similar facts.[61] In *Soler*, the consumer alleged her "[a]ccounts were fully satisfied with a $0 balance" as of December 2015, but a Trans Union report from September 15, 2018 reported her "pay status" as 120 Days Past Due Date.[62] Judge Fischer noted, "there is no definitive statement or guideline on the Credit Report indicating what "pay status" means"; instead "Trans Union include[d] an annotated version of the Credit Report in its Motion to explain what each entry reflects and urge[d] the Court to consider the account information in its entirety."[63] Judge Fischer held, "[w]ithout Trans Union's annotation, explanation, and supplemental documentation, a jury could find that the Credit Report on its face is misleading in such a way that it adversely affects Soler's credit."[64]

In *Gatanas v. Honda*, a consumer paid off an auto loan. Honda and Trans Union continued to report the pay status of the account as "39-59 days late," but noted a zero-dollar balance.[65] The consumer alleged if Honda and Trans Union had conducted a reasonable investigation, they "would have determined that an account with $0 balance could not be late and

past due."[66] Trans Union and Honda moved to dismiss, noting the Pay Status and zero-dollar balance were both, in fact, accurate.[67] Judge McNulty denied the motion to dismiss, noting "even 'technically information . . . can be inaccurate if 'it creates a materially misleading impression,' and –critically here—'[w]hether technically accurate information was misleading is generally a question for the jury."[68] Judge McNulty held, "It may be the case . . . the information is accurate or that such reporting is standard practice . . . [b]ut I cannot say as a matter of law, or simply based on the pleadings." [69] In support, Judge McNulty cited our Court of Appeals instruction in *Seamans* to submit the question of whether a report is misleading to a jury.

In *Macik v. JPMorgan Chase Bank, N.A.*, a consumer fell behind on her mortgage in August 2009, but in November 2009, she sold her house and paid off the mortgage in its entirety, including the three past due payments, leaving a zero-dollar balance.[70] Four years later, the consumer sought a mortgage for a new home.[71] The lender's automated underwriting system concluded she was 'ineligible' for a loan because her Pay Status on the four-year old loan showed as "past due."[72] Judge Froeschner denied Chase Bank's converted motion for summary judgment determining a reasonable finder of fact might conclude the "credit information was inaccurate or incomplete because it was misleading in such a way and to such an extent that it could be expected to have an adverse effect on her."[73] Ultimately at trial, the jury returned a verdict in favor of the consumer.

We find the opinions confirming the accuracy of the tradelines in the context of the entire credit report more persuasive particularly when the creditor does not see the definitions or other disclosures seemingly persuasive when allowing the allegations to proceed into discovery. Congress does not direct us to teach credit reporting agencies on the use of "better" language. Our role is limited to determining whether the report is patently inaccurate or misleading. We are

not venturing into speculative word games as to what Trans Union could otherwise say. Guided by our Court of Appeals' decision in *Schweitzer* as well as the well-reasoned, factually analogous opinions in *Settles*, *Hernandez*, and *Gross*, we find the reported information accurate as a matter of law.

Like the consumers in *Settles*, *Hernandez*, and *Gross*, Ms. Bibbs asks us to limit our review to the Pay Status, which reads ">Account 120 Days Past Due<", ignore all other tradelines, and determine a reasonable creditor would mistakenly believe she currently owes past due payments on these accounts. To support her argument, Ms. Bibbs's counsel repeatedly told us during oral argument ">Account 120 Days Past Due<", is a "present tense statement."[74] But the Pay Status field does not contain a present tense verb. And unlike the investigation results, which define "Pay Status" as the "the current status of your account; how you are currently paying," the credit report does not define Pay Status at all, let alone using the word "current." No creditor sees this reference. The creditor sees the "Date Updated" field lists April 5, 2018, signaling the "Pay Status" of the Navient account was 120 Days Past due as of April 5, 2018—the last time Trans Union updated the account because Navient no longer owned the debt. The Ratings Key, which does not provide data for the account past March 2018, further bolsters this conclusion. And if this were not enough, the Date Closed, the Balance, and the Remarks, all unequivocally confirm the account is closed with a zero-dollar balance.

Ms. Bibbs is essentially asking us to read in non-existing present tense language into the "Pay Status" field and ignore the Date Updated field, the Date Closed field, the Balance field, the remark "ACCT CLOSED DUE TO TRANSFER," and the lack of Ratings information beyond March 2018 to conclude Trans Union reported inaccurate or misleading information. This we cannot do. As the judges in *Hernandez*, *Settles* and *Gross* explained, we must view the account

information given to the creditor in its entirety, and doing so, the reported information is accurate as a matter of law.

We note this case is slightly distinguishable from *Huggins*, *Mund*, *Friedman, Gatanas*, *Soler*, and *Macik.* In *Huggins*, Judge Salas determined she could not determine the accuracy of the account because the parties did not provide the disputed tradelines for her review. The same is true of the claims in *Gatanas*. Ms. Bibbs and Trans Union provided the tradelines for our review and agreed we need no further information to determine whether the tradelines are accurate. In *Mund* and *Friedman*, the credit report indicated the consumer still owed a monthly payment. Ms. Bibbs does not allege a similar defect in her credit report. In *Soler*, the consumer alleged she "fully satisfied" her disputed account as of December 8, 2015 and thus the report could not be accurate. Similarly in *Macik*, the consumer fully paid off her mortgage. Ms. Bibbs does not allege she paid or satisfied her accounts as of the transfer and close of her Navient account. She concedes owing Navient payments for over 120 days when Navient transferred her debt and closed her account with a zero balance.

**III. Conclusion**

We grant judgment on the pleadings to Trans Union as the reported information regarding Ms. Bibbs's debt to Navient as of April 5, 2018 is accurate and would not mislead a reasonable creditor. We grant Ms. Bibbs leave to timely amend to allege facts consistent with Rule 11 which may alter our analysis.

---

[1] ECF Doc. No. 25 ¶ 7.

[2] ECF Doc. No. 27-2 at 5-7.

[3] *Id.* ¶ 8.

[4] *Id.* ¶ 9.

[5] *Id.* ¶ 5. Neither party provides the credit report at issue.

[6] ECF Doc. No. 1-4 at 2.

[7] *Id.*

[8] *Id.*

[9] ECF Doc. No. 27-2 at 2. We may consider the investigation results attached to Trans Union's motion for judgment on the pleadings because Ms. Bibbs incorporated them into the complaint by reference. *Alcedo v. State Farm Mut. Automobile Ins. Co.*, 391 F. Supp. 3d 452, 454 (E.D. Pa. 2019) ("In deciding a motion for judgment on the pleadings made pursuant to Rule 12(c), we consider the facts alleged in the pleadings and documents attached as exhibits or incorporated by reference in the pleadings.")

[10] *Id.* (emphasis in original).

[11] *Id.* (emphasis in original).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] ECF Doc. No. 25 ¶ 23.

[17] *Id.* ¶ 10.

[18] *Id.* ¶ 23.

[19] *Id.* ¶ 28.

[20] ECF Doc. No. 27-2 at 1.

[21] *Id.* at 5.

[22] *See* 15 U.S.C. §§1681n &1681o.

[23] ECF Doc. No. 27-1 at 10.

[24] *Id.* at 11-12.

[25] *See Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014).

[26] *See Horsch v. Wells Fargo Home Mortg.,* 94 F. Supp. 3d 365, 681 (E.D. Pa. 2015) (analyzing whether credit report is accurate or misleading from the perspective of a creditor); *Gross v. Private Nat'l Mort.Acceptance Co., LLC*, No. 20-4192, 2021 WL 81465, at *2 (E.D.N.Y. Jan. 9, 2021) ("[Plaintiff] must point to information on his credit report that is 'materially misleading' to creditors)**;** *Hernandez v. Trans Union, LLC*, 2020 U.S. Dist. LEXIS 249358 at .("Objectively, no reasonable creditor looking at the report would be misled into believ[ing] that the plaintiff was still on the Account").

[27] ECF Doc. No. 44 (Oral Argument Tr. 4:21-24; Tr. 9:21-11:4).

[28] ECF Doc. No. 37 at 6.

[29] ECF Doc. No. 27-1 at 5-6.

[30] *Schweitzer*, 441 F. App'x at 902 (third and fourth alterations in original) (internal quotation marks omitted) (quoting *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).

[31] *Schweitzer*, 441 F. App'x at 902 (internal quotation marks omitted) (quoting *Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 148 (4th Cir. 2008).

[32] *Covington v. Equifax Info. Servs., Inc.*, No. 18-15640, 2019 WL 4254375, at *4 (D.N.J. Sept. 9, 2019) (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2014)).

[33] *See Schweitzer*, 441 F. App'x at 902.

[34] *Id.* at 900–01.

[35] *Id.*

[36] *Id.* at 902.

[37] *Id.*

[38] *Settles v. Trans Union LLC*, No. 20-84, 2020 WL 6900302, at *1 (M.D. Tenn. Nov. 24, 2020).

[39] *Id.* at * 4.

[40] *Id.* at * 5.

[41] *Gross*, 2021 WL 81465, at * 4.

[42] *Id.* at * 1.

[43] *Id.*

[44] *Id.* at * 3.

[45] *Id.*

[46] *Hernandez v. Trans Union, LLC*, No. 19-1987, 2020 U.S. Dist. LEXIS 249358 (S.D. Fla. Dec. 10, 2020).

[47] *Id.* at * 4.

[48] *Id.* at * 3-4.

[49] *Id.* at * 4-5.

[50] *Id.* at * 8.

[51] *Id.* at * 7.

[52] No. 18-6761, 2019 WL 955033, at * 1 (E.D.N.Y. Jan. 9, 2021).

[53] *Id.* at * 3.

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] No. 18-11173, 2019 WL 4194350, at * 1 (S.D.N.Y. Sept. 3, 2019).

[58] *Id.* at * 3.

[59] *Huggins v. FedLoan Servicing*, No. 19-21731, 2020 U.S. Dist. LEXIS 229290, * 16 (D.N.J. Dec. 2, 2020) (citing *Hillis v. Trans Union, LLC*, 969 F. Supp. 2d 419, 421 (E.D. Pa. 2013)).

[60] *Id.* at * 17-18.

[61] No. 20-8459, 2020 WL 7237256, at *1 (C.D. Cal. Dec. 1, 2020).

[62] *Id.*

[63] *Id.* at *3.

[64] *Id.*

[65] *Gatanas v. Honda*, No. 20-7788, 2020 U.S. Dist. LEXIS 228973, at *1 (D.N.J. Dec. 7, 2020).

[66] *Id.* at * 5-6.

[67] *Id.* at * 6.

[68] *Id.*

[69] *Id.* at * 7.

[70] *Macik v. JPMorgan Chase Bank, N.A.*, No. G-14-44, 2015 WL 12999728, at * 1 (S.D. Tex. May 28, 2015), *report and recommendation adopted by Macik v. Trans Union LLC*, No. 14-44, 2015 WL 12999727 (S.D. Tex. July 31, 2015).

[71] *Id.*

[72] *Id.* at * 2.

[73] *Id.* at * 4.

[74] ECF Doc. No. 44 (Oral Argument Tr. 36:5; 36:19-20; 42:17; 45:5).